IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIFTH THIRD BANK, an Ohio banking corporation, successor by merger with Fifth Third Bank, a Michigan banking corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>DONNA L. MALONE and<br>MARK W. ANSTETT,<br><br>        Defendants. | Case No. 1:09-cv-6578<br><br>The Honorable Robert M. Dow, Jr.<br><br>The Honorable Geraldine Soat Brown |

## MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT

Plaintiff, Fifth Third Bank (the "Bank"), by its attorneys, pursuant to Federal Rule of Civil Procedure 55 moves this Court to enter an order for default and default judgment in favor of the Bank and against Defendant, Mark W. Anstett ("Anstett"). In support thereof, the Bank states as follows:

1. On October 19, 2009, the Bank filed its Complaint against Anstett and Defendant, Donna L. Malone ("Malone"), for breach of guaranty and caused summons to be issued to Anstett and Malone. *See* Dkt. Nos. 1 and 4.

2. On October 31, 2009, the Bank affected service on Anstett. *See* Dkt. No. 7.

3. Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Anstett's responsive pleading to the Complaint was due on November 23, 2009. *See* Dkt. No. 7.

4. Anstett has failed to appear, plead, or otherwise defend against the Bank's lawsuit as of April 19, 2010.

5. Anstett is not currently an active member of the United States military. *See* Affidavit As To Military Service attached hereto as **Exhibit 1**.

6.     Pursuant to Federal Rule of Civil Procedure 55, the Bank requests that this Court enter a default against Anstett for his failure to appear, file a responsive pleading, or otherwise defend himself in this matter.

7.     Federal Rule of Civil Procedure 54(b) permits the Court to enter judgment as to one party in an action involving multiple parties, if the Court determines that there is no just reason for delay.  *See* Fed. R. Civ. P. 54(b).

8.     Accordingly, the Bank also requests that this Court enter a default judgment against Anstett for all amounts due and owing to the Bank under the Continuing Guaranty Agreement executed by Anstett on or about September 15, 2008, and the Continuing Guaranty Agreement executed by Anstett on or about December 15, 2008, pursuant to which Anstett "unconditionally, absolutely and irrevocably" guaranteed "the full and prompt payment and performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each and every other obligation or liability" of Equipment Acquisition Resources, Inc. ("EAR") to the Bank (collectively, the "Anstett Guaranties").  *See* Declaration of Cynthia Higgins-Clark ("Clark Decl."), attached hereto as **Exhibit 2**, ¶ 7 and Exs. E and F thereto, § 1(a).

9.     Anstett owes $3,973,002.24 under the Promissory Note executed by EAR on or about September 15, 2008 ("September Note"), based on the Bank's acceleration of the debt following EAR's failure to make its monthly payments of interest and principal on July 15, 2009, and thereafter.  Clark Decl., ¶¶ 8, 12-15 and Exs. G and K thereto.  This amount includes interest through March 23, 2010, with interest continuing to accrue at the per diem rate of $648.01.  Clark Decl., ¶ 14 and Ex. K thereto.

10.     Anstett owes $3,066,419.17 under the Promissory Note executed by EAR on or about December 19, 2008 ("December Note"), based on the Bank's acceleration of the debt following EAR's failure to make its monthly payments of interest and principal on July 15, 2009, and thereafter. Clark Decl., ¶¶ 8, 12-13, 16-17 and Exs. H and L thereto. This amount includes interest through March 23, 2010, with interest continuing to accrue at the per diem rate of $556.47. Clark Decl., ¶ 16 and Ex. L thereto.

11.     Anstett further owes $39,623.77, plus interest accruing at 5% per annum, based on EAR's failure to make its monthly settlement payments under the International Swap Dealers Association Master Agreement that EAR entered into with the Bank on or about September 11, 2008 ("Master Swap Agreement"), the swap entered into by EAR on or about September 19, 2008, and the swap entered into by EAR on or about December 19, 2008 (collectively the "Swaps"). *See* Declaration of William Lavery ("Lavery Decl.") attached hereto as **Exhibit 3**, ¶¶ 12-15 and Exs. A-C thereto.

12.     EAR entered into the Swaps to hedge against increases in the variable interest rates that EAR agreed to under the terms of the September and December Notes. Lavery Decl, ¶ 5.

13.     Upon entering into the Swaps with EAR, the Bank entered into offsetting swaps with another financial institution in order to hedge its position (the "Hedges"). Lavery Decl., ¶ 9.

14.     As a result of EAR's failure to make the required monthly payments under the Notes and Swaps, the Bank terminated the Swaps and Hedges pursuant to the early termination provisions of the Master Swap Agreement (the "Terminations"). Lavery Decl., ¶ 16 and Ex. A thereto, § 6(a).

15. Section 1(f) of the Schedule to the Master Swap Agreement specifies that the Second Method and Loss method will be used to determine the amount of the Bank's damages upon early termination of the Swaps. Lavery Decl., ¶ 6 and Ex. A thereto, Schedule § 1(f). According to the Second Method and Loss method, the defaulting party must pay an amount "equal to the Non-defaulting Party's Loss." Lavery Decl., ¶ 6 and Ex. A thereto, § 6(e)(i)(4).

16. "Loss" is defined in Section 12 of the Master Swap Agreement as the amount that a "party reasonably determines in good faith to be its total losses and costs . . . in connection with this Agreement or that Terminated Transaction . . . including any . . . **loss or cost incurred as a result of its terminating**, liquidating, obtaining or reestablishing **any hedge or related trading position** . . . ." Lavery Decl., ¶ 6 and Ex. A thereto, § 12 (emphasis added).

17. The Terminations of the Swaps and Hedges resulted in a "Loss" to the Bank because the Bank was required to pay unwinding costs to a third party as a result of the Terminations. Lavery Decl., ¶¶ 17, 20-21 and Exs. E and F thereto. The Bank incurred unwinding costs of $164,200.00 for the Hedge relating to the September Swap and $59,400.00 for the Hedge relating to the December Swap, plus interest accruing at 5% per annum. Lavery Decl., ¶¶ 17, 20-21 and Exs. E and F thereto.

18. Under Anstett's Guaranties, the Bank is entitled to reimbursement from Anstett for all reasonable costs, attorneys' fees and legal expenses incurred in exercising its rights and remedies under the Guaranties. Clark Decl., ¶ 18. The Bank has already incurred attorneys' fees in this matter and will continue to incur attorneys' fees through the date of judgment. *Id.*

19. A copy of the proposed Order for Entry of Default and Default Judgment is attached hereto as **Exhibit 4**.

WHEREFORE, Plaintiff, Fifth Third Bank, respectfully requests that this Court enter an Order as follows:

(A) Finding Anstett to be in default for failure to appear, answer or otherwise plead;

(B) Entering default judgment in favor of the Bank and against Anstett as to his guaranty of the September Note in the amount of $3,973,002.24, which includes interest through March 23, 2010, plus interest accruing at the per diem rate of $648.01 through the date of judgment;

(C) Entering default judgment in favor of the Bank and against Anstett as to his guaranty of the December Note in the amount of $3,066,419.17, which includes interest through March 23, 2010, plus interest accruing at the per diem rate of $556.47 through the date of judgment;

(D) Entering default judgment in favor of the Bank and against Anstett for the delinquent monthly payments under the September and December Swaps in the amount of $39,623.77, plus interest accruing at 5% per annum through the date of judgment;

(E) Entering default judgment in favor of the Bank and against Anstett for the unwinding costs incurred by the Bank in the amount of $164,200.00 for the September Swap and $59,400.00 for the December Swap, plus interest accruing at 5% per annum through the date of judgment;

(F) Awarding the Bank its reasonable attorneys' fees and costs through the date of judgment; and

(G) Such other and further relief as the Court deems just and proper.

Dated: May 13, 2010 Respectfully submitted,

                                                           FIFTH THIRD BANK, an Ohio Banking Corporation, successor by merger to Fifth Third Bank, a Michigan Banking Corporation

                                                           By: /s/ Amy R. Jonker
                                                                      One of its Attorneys

Patrick T. Stanton (ARDC #6216899)
Amy R. Jonker (ARDC #6283174)
Melanie Miles (ARDC #6294469)
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606
Phone (312) 876-1700

**CERTIFICATE OF SERVICE**

I hereby certify that on **May 13, 2010**, I electronically filed the foregoing **Motion for Entry of Default and Default Judgment** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following counsel of record:

    William G. Sullivan  (sullivan@mbslaw.com)
    Mason N. Floyd  (floyd@mbslaw.com)

In addition, I served the foregoing document via U.S. Mail, postage prepaid, upon the following:

    Mark W. Anstett
    1111 Estate Lane
    Lake Forest, IL  60045

    /s/ J. Richard Madamba
    J. Richard Madamba

CHICAGO\2834222.5
ID\ARJ - 105710/0006